# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MARQUIS LENOX PARKER,

                                    Plaintiff,

v.                                                        9:21-CV-130
                                                          (LEK/ATB)

PATRICK DONNELLY,

                                    Defendant.

MARQUIS LENOX PARKER, Plaintiff, pro se
STEVE NGUYEN, Asst. Attorney General, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior U.S. District Judge. (Dkt. No. 17). On February 4, 2021, plaintiff commenced this civil rights action pursuant to 42 U.S.C. § 1983 against various named and unnamed individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). (Complaint ("Compl.")) (Dkt. No. 1). By decision and order dated March 29, 2021, Judge Kahn severed the complaint, transferring some of plaintiff's claims to the Western District of New York. (Dkt. No. 5). With respect to the claims remaining in this district, Judge Kahn dismissed several defendants and causes of action pursuant to 28 U.S.C. §§ 1915, 1915A. (*Id.*). The only surviving claim is plaintiff's Fourteenth Amendment due process claim against defendant Patrick Donnelly. (*Id.*).

Presently before this court is defendant Donnelly's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 17). Plaintiff did not respond to defendant's motion for summary judgment, despite seeking and being afforded an

extension of time to do so.  (*See* Dkt. Nos. 19, 21).

## I.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006).  "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial.  *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

As noted, plaintiff failed to oppose defendant's motion for summary judgment, notwithstanding the fact that he was notified of the consequences of failing to respond. (Dkt. No. 17). "Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that movant is proceeding pro se." *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008); *Evans v. Albany Cty. Corr. Facility*, No. 9:05-CV-1400 (GTS/DEP), 2009 WL 1401645, at *6 & n.35 (N.D.N.Y. May 14, 2009) (collecting cases). However, "[w]here, as here, the Court elects to conduct an independent review of the record on a motion for summary judgment, a plaintiff's verified complaint should be treated as an affidavit." *Riehl v. Martin*, No. 9:13-CV-439 (GLS/TWD), 2014 WL 1289601, at *5 (N.D.N.Y. Mar. 31, 2014) (*citing Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)); *Berkley v. Ware*, No. 9:16-CV-1326 (LEK/CFH), 2018 WL 3736791, at *3 (N.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 3730173 (N.D.N.Y. Aug. 6, 2018). The court, in its discretion, has elected to conduct an independent review of the record despite plaintiff's failure to respond to the summary judgment motion and has considered his verified complaint (Dkt. No. 1).

## II.   <u>Factual Contentions</u>

Plaintiff was an inmate in the custody of Auburn Correctional Facility (C.F.) at all times relevant to the surviving claim against defendant Donnelly. The following is a summary of the relevant facts as stated in the complaint. To the extent that additional facts were developed through discovery, and included in the summary judgment

motion, I will discuss them during my analysis of the pending claims.

Plaintiff alleges that on December 5, 2017, Correction Officer (C.O.) Allen[1] issued plaintiff a "falsified" misbehavior report because of a "personal vendetta" she held against him. (Compl. at 6). Specifically, the misbehavior report states[2] that at "approximately" 3:45 p.m. that day, plaintiff "left his call out in the law library and approached [C.O. Allen's] desk in the media center." (Declaration of Patrick Donnelly ("Donnelly Decl.") Ex. A at CM/ECF p. 8) (Dkt. No. 17-2). Plaintiff "attempted to start a conversation" with C.O. Allen, at which time she directed him to return to his assigned post at the law library. (*Id.*). Plaintiff returned to C.O. Allen's desk a few minutes later and made "inappropriate" comments about her hair. (*Id.*). C.O. Allen told plaintiff he was being inappropriate, and once again told him to leave her area, which he did. (*Id.*). Approximately five minutes later plaintiff returned to C.O. Allen's desk "for a third time and asked when [her] birthday was." (*Id.*). At that time C.O. Allen notified her area supervisor and the law library officer, confirming that plaintiff had "left the area without permission to go to the media center." (*Id.*). The report indicates that, as a result of his conduct, plaintiff was "escorted to SHU-D pending disciplinary." (*Id.* at CM/ECF p. 9). Plaintiff was charged with five rule violations, including "Direct Order," "Interference," "Harassment," "Out of Place," and "Stalking." (*Id.* at CM/ECF

---

[1]C.O. Allen was originally named as a defendant in the underlying action, however the complaint was dismissed as against her in Judge Kahn's March 29, 2021 decision and order. (Dkt. No. 5).

[2]A copy of the relevant inmate misbehavior report authored by C.O. Allen was included as an exhibit in defendant's motion papers. (Declaration of Patrick Donnelly ("Donnelly Decl.") Ex. A at CM/ECF pp. 8–9) (Dkt. No. 17-2). It is clear that the parties dispute whether the conduct described in C.O. Allen's report actually took place.

p. 8).  The misbehavior report was "endorsed" by an "employee witness," C.O. Schwab.[3]  (*Id.*).

Defendant Lieutenant Patrick Donnelly presided over plaintiff's disciplinary hearing related to the misbehavior report, commencing on December 13, 2017. (Compl. at 6).  The hearing lasted several days, and concluded on January 4, 2018. (*Id.*).  Plaintiff alleges that during the hearing, C.O. Allen and C.O. Schwab presented "false" testimony.  (*Id.* at 18–19).  He also alleges that, despite plaintiff's request, defendant Donnelly refused to allow plaintiff to call two "highly relevant" inmates as witnesses, who would testify that plaintiff was in his cell during the time of the incident.  (*Id.* at 6, 14).  Plaintiff further maintains that defendant Donnelly obstructed plaintiff's questioning of witnesses, and "prejudg[ed the] evidence."  (*Id.* at 14, 16).  At the conclusion of the hearing defendant Donnelly found plaintiff guilty of the five rule violations charged by C.O. Allen, and sentenced plaintiff to 180 days of confinement in the SHU, with a corresponding loss of package, commissary, and telephone privileges. (*Id.* at 7).

Plaintiff appealed defendant Donnelly's disciplinary determination at the administrative level.  On March 6, 2018, D. Venettozzi,[4] the Director of the SHU, modified the disposition and dismissed one of the five charges.  (*Id.*).  The modification

---

[3]C.O. Schwab was originally named as a defendant in the underlying action, however the complaint was dismissed as against him in Judge Kahn's March 29, 2021 decision and order.  (Dkt. No. 5).

[4]Director Venettozzi was originally named as a defendant in the underlying action, however the complaint was dismissed as against him in Judge Kahn's March 29, 2021 decision and order.  (Dkt. No. 5).

did not alter plaintiff's penalty as issued by defendant Donnelly.  (*Id.*).

   Plaintiff alleges that while confined to the Auburn C.F. SHU between December 5, 2017 and January 22, 2018,[5] he was denied his one hour of recreation time and received only one or two showers per week.  (*Id.* at 7–8).  On one occasion, plaintiff was forced to take a shower, while handcuffed behind his back, in his clothing.  (*Id.*).  For a three day period from December 6, 2017 through December 8, 2017, plaintiff was denied breakfast, lunch and dinner.  (*Id.* at 8).  Plaintiff was also verbally harassed.  (*Id.*).  On Christmas Day, plaintiff received only two loaves of bread and butter, while other SHU inmates received "brunch" and a "special dessert."  (*Id.* at 8–9, 17).

   Plaintiff also appealed the disciplinary determination in an Article 78 petition in New York State court, claiming in part that defendant Donnelly violated his due process rights during the disciplinary hearing.  (*Id.* at 13–14).  The state court found, at least partially, in favor of some of plaintiff's arguments; however, plaintiff alleges that the court did not address all of his claims.  (*Id.* at 14).  On September 25, 2019, Director Venettozzi administratively reversed plaintiff's disposition and expunged all references to the disciplinary hearing.  (*Id.* at 14).  The reversal took effect after plaintiff had already completed his disciplinary sentence.  (*Id.* at 14, 20).

---

[5]Plaintiff was transferred to Southport C.F. on January 22, 2018, where he appears to have served out the remainder of his disciplinary confinement in the SHU.  (Compl. at 9, 20).  Plaintiff testified that he was confined to the SHU for a total of 138 days of out the 180 day sentence, because Southport C.F. gave him a "time cut."  (Declaration of Steve H. Nguyen ("Nguyen Decl.") Ex. A ("Plt. Deposition Tr.") at CM/ECF p. 99).

III.  **Due Process**

A.  **Legal Standards**

To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process.  *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates who are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

The due process protections afforded inmates facing disciplinary hearings that are found to affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination.  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing inter alia, *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)).  The hearing officer's findings must be supported by "some" "reliable evidence."  *Id*. (citing inter alia, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).  If the court determines that the plaintiff received due process, it need not reach the issue

of whether plaintiff had a liberty interest under *Sandin. Bedoya v. Coughlin*, 91 F.3d 349, 352 (2d Cir. 1996).

### B.    Analysis

#### 1.    Liberty Interest

Defendant does not contest whether plaintiff's confinement in the SHU deprived him of a constitutionally protected liberty interest, for purposes of the summary judgment motion.  As the district court noted in its initial review of plaintiff's complaint, the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).  Nonetheless, the Second Circuit's "cases make clear that duration is not the only relevant factor. The conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of 'atypical and severe hardship. . . .' " *Palmer v. Richards*, 364 F.3d at 64 (quoting *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003)). Therefore, "[b]oth the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (citation omitted). *See also Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) ("unusually harsh conditions" may implicate liberty interest even for relatively short periods of SHU confinement).

Here, plaintiff alleges that he served a total of 138 days confined in the SHU, during which time he alleges, among other things, he was denied food for a period of

three consecutive days. (Compl. at 7–8; Plt. Deposition Tr. at CM/ECF pp. 83, 92–93, 118–19). "Deprivation of food, even for relatively brief periods, can . . . give rise to a liberty interest." *Brooks v. Chappius*, 450 F. Supp. 2d 220, 224 (W.D.N.Y. 2006) (citing *Gayle v. Keane*, No. 94 Civ. 7583, 1998 WL 187862, at *6 (S.D.N.Y. Apr. 21, 1998) (stating that if plaintiff's allegation that he was deprived of food for the first three days of his SHU confinement were true, "such a deprivation would constitute a significant and atypical deprivation giving rise to a liberty interest"). "In addition, '[t]he Second Circuit has held that allegations such as . . . the deprivation of food . . . should be resolved in the plaintiff's favor on a motion for summary judgment.' " *Id.* (quoting *Blissett v. Coughlin*, No. 84-CV-779, 1998 WL 440025, at *5 (N.D.N.Y. July 23, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 138 (2d Cir. 1998)). As previously stated, defendant does not address plaintiff's contention that he was denied food during his confinement in the SHU. Thus, for purposes of the instant motion the court find's that plaintiff's allegations have established an "atypical and significant hardship" that would implicate a protected liberty interest.

### 2.    Process Due

"Once a prisoner makes a threshold showing of atypical and significant confinement, or where questions of fact exist as to whether a prisoner was deprived of a liberty interest, the court should determine whether that prisoner was afforded the minimum requirements of due process prior to that confinement." *Williams v. Chuttey*, 767 F. App'x 105, 107 (2d Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. at 557–58). Liberally construed, plaintiff raises the following due process violations: (1) defendant

9

Donnelly was not fair and impartial because he (a) prejudged the evidence and (b) interfered with/influenced the testimony of C.O. Allen and C.O. Schwab, and (2) plaintiff was denied the opportunity to question two inmate witnesses whose testimony was "highly relevant" to his defense.

### a.    Impartial Hearing Officer

It is well settled that prisoners have a constitutional right to a fair and impartial hearing officer. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004); *see also Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) ("This Court has explained that "[o]ur conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen.") (quoting *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir. 1990)).  However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . . [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).

In considering the impartiality of a hearing officer, the Supreme Court has held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . . ." *Luna v. Pico*, 356 F.3d 481, 487–88 (2d Cir. 2004); s*ee also Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The Second Circuit, however, "has not construed the phrase 'any evidence' literally" and instead looks to whether there was any "reliable evidence" supporting the decision. *Luna v. Pico*, 356 F.3d at 488; *see also Sira v. Morton*, 380 F.3d at 76-77. "This proposition is grounded

in the understanding that due process mandates not just a hearing before a deprivation of liberty, but requires more precisely that an inmate 'receive a fair hearing.' " *Johnson v. Greiner*, No. 03 Civ. 5276, 2007 WL 2844905, at *10 (S.D.N.Y. Sept. 28, 2007) (quoting *Sira v. Morton*, 380 F.3d at 77).  Nevertheless, prison officials serving as hearing officers "enjoy a rebuttable presumption that they are unbiased." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). "Claims of a hearing officer bias are common in [inmate section] 1983 claims, and where they are based on purely conclusory allegations, they are routinely dismissed." *Washington v. Afify*, 968 F. Supp. 2d 532, 541 (W.D.N.Y. 2003) (citing cases). "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact." *Johnson v. Fernandez*, No. 09-CV-626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).

One of plaintiff's contentions is that defendant Donnelly was not impartial because he improperly influenced the hearing testimony of C.O. Allen and C.O. Schwab.  In opposition to this claim and support of his motion for summary judgement, defendant Donnelly has submitted the disciplinary hearing transcript, which this court has reviewed in full.  (Donnelly Decl. Ex. B).  Contrary to plaintiff's allegations, the transcript is devoid of any indication that defendant Donnelly led C.O. Allen or C.O. Schwab's testimony, or improperly answered on their behalf. "While inmates have the right to question witnesses at their disciplinary hearings, that right is not unlimited, and its contours are under the discretion of prison officials." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 125 (S.D.N.Y. 2002); *see also Lewis v. Murphy*, No. 12-CV-268, 2014

11

WL 3729362, at *11 (N.D.N.Y. June 24, 2014) (upholding the authority of a hearing officer to "administer the questioning in a manner he saw fit").  During an inmate's portion of the questioning, the hearing officer "retain[s] the authority and discretion to administer the questioning in a manner [the hearing officer] deem[s] appropriate." *Perez v. Keysor*, No. 10-CV-0518, 2013 WL 5493932, at *22 (N.D.N.Y. Sept. 23, 2013).  Here, the evidence reflects that defendant Donnelly relayed the majority, if not all, of plaintiff's questions to these two DOCCS witnesses, and permitted them to answer without interruption.  Defendant Donnelly sought clarification of their testimony at times, which was not inappropriate.  Accordingly, the court finds that no reasonable fact finder could conclude that defendant Donnelly improperly influenced the testimony of C.O. Allen or C.O. Schwab, and that plaintiff's allegations of improper influence do not support his due process claim.

Plaintiff also alleges that he was deprived of his right to due process because defendant Donnelly prejudged the evidence.  "[I]t is axiomatic that a prison disciplinary hearing in which the result is arbitrarily and adversely predetermined violates this right." *Williams v. Chuttey*, 767 F. App'x at 109 (quoting *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).  However, as previously discussed a plaintiff cannot carry his burden on a motion for summary judgment with bare, unsupported allegations of bias. *Johnson v. McClure*, No. 9:06-CV-0431 (GTS/DEP), 2009 WL 2356147, at *18 (N.D.N.Y. July 28, 2009).

Here, defendant Donnelly denies that he prejudged the evidence against plaintiff, and points to the evidence of record which supported his determination of guilt.  Again,

the court has reviewed the disciplinary hearing transcript in full, as provided by

defendant in support of his motion. There came a time during plaintiff's disciplinary

hearing when defendant Donnelly took testimony from C.O. Schwab, who endorsed

C.O. Allen's misbehavior report as an "employee witness." Through his hearing

testimony, C.O. Schwab clarified that he did not actually witness plaintiff's conduct as

described in C.O. Allen's misbehavior report; however, he offered testimony describing

plaintiff's duties as a law library clerk, and where in the facility plaintiff was permitted

to travel freely in conjunction with these duties. (Donnelly Decl. Ex. B at CM/ECF pp.

40–41). The following testimony ensued:

> Hearing Officer Donnelly: So, you're saying that if [plaintiff]
> goes out to the blocks, you go out through the gym door and not
> the media center?
>
> Officer Schwab: Yes sir.
>
> Hearing Officer Donnelly: Any other questions?
>
> Plaintiff Inmate Parker: So you saying that you witnessed me go
> right instead of left.
>
> Hearing Officer Donnelly: I do not remember that but based on
> Officer Allen's testimony that you did that, I believe what she
> says, if you went and talked to her and you bothered her and she
> prompted you, just like it said in the ticket, that you were being
> inappropriate then I believe her.
>
> Plaintiff Inmate Parker: You don't believe that an officer would
> fabricate a report against an inmate to get back at them somehow.
>
> Hearing Officer Donnelly: No, we would never allow that.

(*Id.* at CM/ECF pp. 41–42).

Defendant Donnelly does not address the aforementioned testimony in his motion

papers, particularly his expression of disbelief that a correction officer would ever fabricate a misbehavior report against an inmate for retaliatory purposes. Without any explanation to the contrary, defendant Donnelly's testimony from the disciplinary hearing suggests his refusal to consider the basis of plaintiff's defense to the charges against him – that C.O. Allen issued a false misbehavior report to "get back at" plaintiff.

The Second Circuit has previously grappled with similar facts surrounding allegations of a hearing officer's impartiality. *See Colon v. Coughlin,* 58 F.3d 865 (2d Cir. 1995).[6] Colon, also an inmate in DOCCS custody, commenced an action in federal court alleging that the "defendant prison officials, angered by two prior lawsuits brought by [Colon], retaliated by concocting a scheme to plant contraband in his cell and to subject him to disproportionate disciplinary action." *Colon v. Coughlin,* 58 F.3d at 867. Among other issues before the Second Circuit upon their review of the district court's award of summary judgment to the defendants was whether plaintiff was collaterally estopped from arguing the contraband was planted in his cell by the defendant correction officers, because the argument was already raised and adjudicated during both plaintiff's disciplinary hearing and in the Article 78 proceeding plaintiff commenced in state court. Ultimately, the Second Circuit concluded that "neither the Article 78 decision nor the Tier III hearing ha[d] a preclusive effect in Colon's section 1983 action[.]" *Id.* at 871. Specifically, the court found that plaintiff had not had a "full

---

[6]The court recognizes that *Colon* was later abrogated on other grounds; specifically as to the issue of supervisory liability in a section 1983 claim. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). However, upon review this court finds no subsequent case law calling into question the *Colon* court's analysis concerning hearing officer bias.

and fair opportunity" to litigate the issue at his Tier III hearing:

> Colon was entitled to have his disciplinary charges reviewed by an unbiased hearing officer . . . . An exchange between Colon and [defendant Hearing Officer] Howard toward the end of the Tier III hearing, however, indicates that Howard was far from unbiased. When Colon asked Howard whether Howard believed that a corrections officer . . . was capable of fabricating charges against an inmate, Howard responded, "I believe the staff here is professional and I don't think anyone would deal along those lines. I know I wouldn't." This statement, together with Howard's subsequent statement that he would only consider the possibility that the contraband had been planted "by someone else," at the very least creates an issue of fact as to whether Howard refused even to consider, on the evidence, the merits of Colon's principal defense to the charges against him. We do not suggest that every time a prisoner alleges bias on the part of a hearing officer, the allegation alone will suffice to defeat the application of collateral estoppel. But where a hearing officer indicates on the record that, without considering the evidence, he finds a prisoner's factual defense inconceivable, we cannot conclude that the prisoner had a full and fair opportunity to litigate the issue.

*Id.* at 871.

*Colon* assessed the issue of a hearing officer's purported bias in the context of collateral estoppel. However, in both *Colon* and the matter presently before this court, the hearing officer represented, on the record, that he could not accept a prisoner's defense regardless of the evidence presented during a disciplinary hearing. The Second Circuit unequivocally found such language to suggest that a hearing officer is "far from unbiased." *Id.* Thus, in this case, considering the Second Circuit's decision in *Colon* and without any further explanation from the defendant, the court cannot conclude as a matter of law that defendant Donnelly acted as an impartial hearing officer.

Defendant argues that, fairness and impartiality notwithstanding, the court must

15

find that plaintiff's due process rights were satisfied as long as there is "any evidence that supports the disciplinary ruling." The Second Circuit has made clear that "[t]he evidence relied upon must be 'reliable.'" *James v. Bradley*, 808 F. App'x 1, 2 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d at 488). Defendant argues that the evidence supporting defendant Donnelly's guilty determination includes (1) C.O. Allen's misbehavior report, (2) the "master callout sheet" that placed plaintiff at the law library at the time of the alleged incident, and (3) testimony from four correction officers. However, the record before this court reflects that C.O. Allen's misbehavior report and her subsequent testimony were, at the least, called into question at the disciplinary hearing, due to issues validating the timing of the underlying incident – a relevant issue considering plaintiff's defense that he was not in the media center at the time the alleged incident occurred, and that C.O. Allen fabricated the misbehavior report in retaliation against him. (Donnelly Decl. Ex. B at CM/ECF pp. 17–18, 31, 35–37, 39–40). Otherwise, the "master callout sheet" upon which defendant Donnelly relied appears to have placed plaintiff out of his cell "during the 2:30-3:00 o'clock rounds," however it does not evidence that plaintiff was not in his cell at 3:45 p.m., when the incident was alleged to occur. (*Id.* at CM/ECF pp. 31–33, 47). The testimony of the remaining DOCCS witnesses – Sargeant Schedler, C.O. Schwab, and C.O. Wilson – reflects that they did not witness plaintiff's conduct as alleged in the misbehavior report. (*Id.* at CM/ECF pp. 35, 38–42, 43–44). Plaintiff was not permitted to call the two inmate witnesses who he contended would testify that he was in his cell at the time of the alleged infraction. (*Id.* at CM/ECF pp. 37–38, 43–44). On the specific facts

presently before this court, I cannot conclude that plaintiff received a "fair hearing" as a matter of law, thereby rendering the alleged impartiality of defendant Donnelly immaterial. *Sira v. Morton,* 380 F.3d at 77–78 ("Fairness cannot be achieved without some assessment of the reliability of the evidence offered against the accused.").

Defendant also argues that this court must find the 'some evidence' standard to be satisfied, because the state court upheld plaintiff's guilty determination as to harassment and being out of place under the substantial evidence standard, which is stricter than the 'some evidence' standard necessary to afford due process. However, defendant does not address the fact that, out of the four violations which ultimately formed the basis of plaintiff's confinement in the SHU, the state court found that two of those charges were unsubstantiated, and directed they be expunged from plaintiff's institutional record. (Nguyen Decl. Ex. C). It is unclear to this court whether plaintiff would have been subject to the same liberty deprivations had he only been sentenced for the two charges which were upheld by the state court as having been supported by "substantial evidence." Accordingly, on this record, the court cannot conclude as a matter of law that plaintiff's guilty determination was supported by reliable evidence, defeating plaintiff's Fourteenth Amendment claim.

Notwithstanding the above findings, the court must proceed to determine whether existing legal doctrines would otherwise preclude plaintiff's due process claim on the basis of hearing officer impartiality - namely the doctrines of collateral estoppel and harmless error. As to the former, there is nothing in the record to suggest that plaintiff is collaterally estopped from raising the issue of defendant Donnelly's impartiality in

his section 1983 claim.  A federal court must apply New York collateral estoppel law to New York State court judgments, which doctrine "precludes a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Stapleton v. Ponte*, 792 F. App'x 57, 58 (2d Cir. 2019) (citations omitted); *see also Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (Under New York law, "[c]ollateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same.") Collateral estoppel applies with respect to Article 78 proceedings.  *Id.*  (citing *LaFleur v. Whitman*, 300 F.3d 256, 272 (2d Cir. 2002)).  The proponent of collateral estoppel must show (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *Pagan v. Venettozzi*, No. 9:18-CV-1094(TJM/DJS), 2019 WL 7584295, at *3 (N.D.N.Y. Dec. 6, 2019) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997), *report and recommendation adopted*, 2020 WL 224700 (N.D.N.Y. Jan. 15, 2020)).

There is no dispute that plaintiff litigated an Article 78 proceeding in state court regarding the same disciplinary proceeding at issue here.  A copy of the Article 78 court's Memorandum and Judgment has been submitted to the court with defendant's motion papers. (Nguyen Decl. Ex. C at CM/ECF pp. 165–67).  As previously discussed,

the state court found that substantial evidence did not support two out of the four rule violations for which plaintiff was found guilty after Director Venettozzi's review – interfering with an employee and stalking.  (*Id.* at CM/ECF p. 166).  However, the state court found "that part of the determination finding [plaintiff] guilty of harassment and being out of place [was] supported by substantial evidence consisting of the misbehavior report, related documentation and hearing testimony."  (*Id.*).

The state court next found that defendant Donnelly "improperly denied petitioner's request to call as witnesses the two inmates who were housed on each side of his cell, as their potential testimony was highly relevant to the underlying incident." (*Id.*).  However, because the state court found that defendant Donnelly "acted in good faith in denying the request on the ground of relevancy, petitioner's regulatory right to call witnesses was violated and a new hearing on [the two remaining charges], rather than expungement, [was] the appropriate remedy."  (*Id.*).  Accordingly, the state court directed that plaintiff's "determination [be] annulled," and his institutional record be expunged of "all references to the charges of interfering with an employee and stalking[.]" (*Id.* at CM/ECF p. 167).  The matter was remitted for a rehearing on the remaining charges: harassment and being out of place.  (*Id.*).  Rather than conduct another hearing, DOCCS elected to administratively reverse the disposition in full, and expunged all references to the disciplinary hearing.  (Nguyen Decl. Ex. D at 169–70).

At the outset, there is nothing in the state court's Memorandum and Judgment suggesting that the issue of defendant Donnelly's impartiality was raised in the Article 78 proceeding.  On its face, the opinion appears limited to issues regarding the

19

sufficiency of the evidence, and plaintiff's right to call witnesses. The burden of proving identity of the issue rests on the proponent of collateral estoppel. *Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 706, 730 (2d Cir. 2001). Here, defendant's submission of the state court decision alone is insufficient to satisfy their burden in this regard:

> [B]ecause defendant[ ] [has] not submitted plaintiff's Article 78 petition or the briefs filed by the parties in that proceeding, the court has only the Third Department Opinion in the Article 78 for consideration in assessing whether [Defendants are] entitled to dismissal of Plaintiff's due process claim on collateral estoppel grounds. Having reviewed the Opinion, the Court concludes that it does not provide sufficient information to determine the applicability of the doctrine.

*Pagan v. Venettozzi*, 2019 WL 7584295, at *3 (quoting Quezada v. Fischer, 2016 WL 11478236, at *6 (N.D.N.Y. Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 1118451 (N.D.N.Y. Mar. 22, 2016)).

Moreover, even if the issue of defendant Donnelly's purported impartiality had been raised to the Article 78 court, the state court opinion does not suggest that the issue was "actually litigated and decided" in that proceeding. After deciding the issues as mentioned above, the state court summarily concluded that, "in view of our disposition, we need not address petitioner's remaining claim." (Nguyen Decl. Ex. C at CM/ECF p. 167). Whether petitioner's remaining claim was defendant Donnelly's purported bias cannot be determined on this record; however, it is clear that issue was not decided in that proceeding. Accordingly, the court concludes that collateral estoppel does not preclude plaintiff from proceeding with his due process claim against

20

defendant Donnelly based on his purported impartiality as a hearing officer.

The court also assesses plaintiff's due process claim for harmless error. "The Second Circuit has endorsed harmless-error review for inmate due process claims." *See Gibson v. Heary*, No. 17-CV-272S, 2021 WL 854736, at *10 (W.D.N.Y. Mar. 5, 2021) (citing *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009)). "On a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that the alleged procedural errors caused him prejudice by affecting the outcome of the hearing." *Rooks v. Santiago*, No. 3:20-CV-299, 2022 WL 561412, at *10 (D. Conn. Feb. 24, 2022) (citing *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial")); *Clark v. Dannheim*, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing"). A plaintiff bears the "burden to show that he was prejudiced by the defendants' conduct," and "he cannot prevail on his claim based on mere speculation." *Id.* (quoting *Allah v. Semple*, No. 3:18-CV-887, 2019 WL 6529821, at *9 (D. Conn. Dec. 4, 2019)).

On the record presently before this court, I cannot conclude that, as a matter of law, defendant Donnelly's purported impartiality did not cause plaintiff prejudice by affecting the outcome of the disciplinary hearing. If a jury were to find that defendant

Donnelly prejudged the evidence, this would necessarily lead to the consideration of whether plaintiff would have been subject to SHU confinement for the duration that he ultimately served, under the conditions alleged, had his hearing been adjudicated by an impartial hearing officer.  In making this finding, the court considers that the state court only found that two of the four violations were supported by substantial evidence, also found that defendant Donnelly violated plaintiff's regulatory right to call two "highly relevant witnesses" in plaintiff's defense, and that the entire disposition was ultimately expunged from plaintiff's institutional record, without a rehearing.  *See Ruggiero v. Prack*, 168 F. Supp. 3d 495, 518 (W.D.N.Y. 2016) (concluding as a matter of law that defendant hearing officer violated plaintiff's due process right to an impartial hearing officer where the defendant, among other things, "prejudged the evidence against plaintiff," dismissed plaintiff's defense without any apparent consideration, and prevented him from questioning witnesses about matters directly relevant to his defense).

In sum, the court finds that a question of fact remains on the merits of plaintiff's Fourteenth Amendment due process claim, specifically as it relates to the issue of whether defendant Donnelly violated plaintiff's right to have his disciplinary hearing adjudicated by a fair and impartial hearing officer.  *See Williams v. Meyer*, No. 16-CV-857A, 2019 WL 4059012, at *3 (W.D.N.Y. Aug. 28, 2019), *report and recommendation adopted*, 2019 WL 5715229 (W.D.N.Y. Nov. 5, 2019) ("The question thus becomes what process plaintiff received and whether some triable question of fact emerges from it.").  Accordingly, I recommend that defendant's motion for summary

judgment be denied as to the limited issue of whether plaintiff's Fourteenth Amendment due process right was violated by defendant Donnelly because he prejudged the evidence.

### b.    Denial of Witnesses

Plaintiff also contends that defendant Donnelly denied him the right to call particular witnesses in his defense of the charges set forth in the misbehavior report. "The inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S at 566. However, "prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal and undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.*; *see also Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991) (a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony or evidence); *Phelan v. Superintendent of the Great Meadow Corr. Facility*, No. 11-CV-6127, 2012 WL 1190169, at *6 (W.D.N.Y. Apr. 9, 2012) ("The Supreme Court has stated that disciplinary hearing officers must have the discretion to deny witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of necessity, and other hazards particular to each case."). "In exercising his discretion to exclude evidence from a disciplinary hearing, a prison official must 'explain, in a limited manner, the reason why witnesses were not allowed to testify. . . .' " *Brooks v. Prack*, 77 F. Supp. 3d 301,

318 (W.D.N.Y. 2014) (quoting *Ponte v. Real*, 471 U.S. 491, 497 (1985)).

As previously discussed, the Article 78 court's Memorandum and Judgment establishes that this precise issue was raised during plaintiff's state court proceeding. Upon review, the state court concluded that although defendant Donnelly improperly denied plaintiff's request to call two inmate witnesses, the error only amounted to a violation of plaintiff's regulatory right to call witnesses because defendant Donnelly acted in "good faith in denying the request on the ground of relevancy." (Nguyen Decl. Ex. C at CM/ECF p. 166). Accordingly, the state court ordered a new hearing on these charges, rather than expungement. (*Id.*). In support of their determination, the court cited to New York state opinions emphasizing the distinction between a constitutional and regulatory violation committed during an inmate disciplinary hearing. *See, e.g., Mosley v. Annucci,* 146 A.D.3d 1054, 1055 (3d Dep't 2017) (citing *Hand v. Gutwein,* 113 A.D.3d 975, 976 (3d Dep't 2014) ("In situations where an inmate is improperly denied the right to call a witness at a disciplinary hearing, the appropriate remedy of remittal or expungement depends upon whether the situation constitutes a regulatory or constitutional violation . . . . [W]hile [a] hearing officer's actual outright denial of a witness without a stated good-faith reason, or lack of any effort to obtain a requested witness's testimony, constitutes a clear constitutional violation [requiring expungement,] [m]ost other situations constitute regulatory violations [requiring a new hearing].")).

Although not explicitly stated by the Article 78 court, it is clear that in limiting their relief to a rehearing, they found that defendant Donnelly's conduct fell short of

violating plaintiff's constitutional rights.  Because the Article 78 court concluded that plaintiff's constitutional rights were not abridged by defendant Donnelly's conduct in this regard, and in the absence of any evidence suggesting that plaintiff was not afforded a full and fair opportunity to litigate this claim in the Article 78 proceeding, the state court's determination "is entitled to full faith in credit and precludes plaintiff from mounting a challenge in this court" arguing to the same effect.  *Jones v. Smith*, No. 9:13-CV-1004 (GTS/DEP), 2015 WL 1414511, at *11 (N.D.N.Y. Mar. 27, 2015) (concluding that plaintiff was collaterally estopped from asserting that the defendant hearing officer violated his due process rights, where the Article 78 court implied that plaintiff's constitutional rights were not violated in "remitting the matter instead of requiring that the determination be expunged").  Accordingly, this court concludes that plaintiff's claim that defendant Donnelly improperly precluded plaintiff's witnesses does not support his due process claim.

## IV.   <u>Qualified Immunity</u>

### A.   **Legal Standards**

The doctrine of qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In determining if a particular right was clearly established, the court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was

unlawful." *K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011)).  The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable official'" in light of the specific context of the case, "not as a broad general proposition." *Id*. (citing, *inter alia, Reichle v. Howards*, 566 U.S. 658, 665 (2012)). *See also Rose v. City of Utica*, 777 F. App'x 575, 576 (2d Cir. 2019).

A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but whether existing precedent has "placed the statutory or constitutional question beyond debate." *Id*. (citing, *inter alia, Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012)).  An officer cannot have violated a "'clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it . . . .'" *Rose v. City of Utica*, 777 F. App'x at 576 (quoting *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015)).  Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation, are relevant in deciding whether the right is well established.  *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

The Supreme Court has also instructed that courts should not "'define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Duffy v. Wallace*, 737 F. App'x 591, 592 (2d Cir. 2018) (quoting *Plumhoff v.*

*Rickard*, 572 U.S. 765, 779 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal quotation marks omitted). Because qualified immunity is "'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citations omitted).

### B.    Application

Defendant alternatively argues that he should be awarded summary judgment because he is entitled to qualified immunity. Because the court is recommending that plaintiff's claims with respect to defendant Donnelly's (1) alleged influence over C.O. Allen and C.O. Schwab's testimony, and (2) denial of plaintiff's request to call certain inmate witnesses do not rise to violations of constitutional proportions, we need not address whether qualified immunity applies. Thus, the court's analysis is limited to plaintiff's claim that defendant Donnelly prejudged the evidence. As noted above, the record indicates material issues of fact as to whether plaintiff's Fourteenth Amendment due process rights were violated by defendant Donnelly's purported impartiality. Thus, the first prong of qualified immunity is met.

Concerning the second prong, "[p]laintiff's right to an impartial hearing officer . . . was clearly established at the time of the hearing." *Tolliver v. Skinner*, 12 Civ. 971, 2017 WL 1017649, at *6 (S.D.N.Y. Mar. 13, 2017) (citing *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir. 1989)); *see also Collins v. Ferguson,* No. 10-CV-6350, 2015 WL 1044359, at *10 (W.D.N.Y. Mar. 10, 2015) ("Clearly, pursuant to the *Wolff* standard, an

inmate's due process right[ ] to an impartial and unbiased hearing officer . . . w[as] well established at the time the disciplinary hearing took place."). Whether defendant Donnelly was biased to the extent of a due process violation is disputed, and thus summary judgment on qualified immunity grounds is inappropriate. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain.").

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendant's motion for summary judgment (Dkt. No. 17) be **DENIED** as to the limited issue of plaintiff's Fourteenth Amendment due process claim based on allegations that defendant Donnelly unfairly prejudged the evidence, but otherwise be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 15, 2022

Andrew T. Baxter
U.S. Magistrate Judge